[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 64, and the defendant wife, 46, whose birth name is Zimmerman, married on June 1, 1985 in Albany, New York. The plaintiff lived continuously in this state for over one year before commencing this action for dissolution of the marriage and other relief via in hand service of the summons and complaint on the defendant on January 10, 2002 thereby affording jurisdiction to this court. There are three children issue of the marriage: Courtney E. Lane born March 13, 1986, Ryan S. Lane born February 20, 1988 and Jonathan Jay Lane born May 4, 1993. During trial, in open court, the parties stipulated to joint legal custody with principal residence with their mother and reasonable visitation by their father which the court accepted and will incorporate in the judgment. Both parties enjoy good health.
The plaintiff graduated from Davidson University in 1960, from Wake Forest University medical school, interned and completed his residency in general surgery at a Boston hospital. He joined Harvard Medical School in 1972 and served as Dean of Student Affairs from 1972 to 1975. He served as Director of Surgery and taught at Kings County Hospital from 1975 until 1981. He worked at the National Cancer Institute from 1981 to 1983. He joined Albany Medical Center as a professor and maintained some private practice. He was chief of surgery at the center when he met and married the defendant.
The defendant, a 1979 graduate of Wisconsin University, was employed by her father as a buyer for his clothing stores when married. She stopped working in 1986. She remained a full-time homemaker throughout their marriage until their final separation.
They purchased a home on the outskirts of Worcester, Massachusetts when the plaintiff joined St. Vincent Hospital in Worcester where he performed complex surgery. He also taught residents at U. Mass. A majority of his patients were HMO from the Fallon clinic and in 1990 Fallon bought the hospital and terminated all chiefs of service including the plaintiff. At CT Page 4331 that time his salary was over $200,000. The plaintiff found employment in this state with Waterbury Hospital as chief of surgery at $200,000 salary. He was permitted to treat private patients as well. This also provided an affiliation with Yale New Haven Hospital where he conducted research. Difficulties developed over his claim of $40,000 extra earnings which the hospital refused to pay. The plaintiff prevailed in arbitration and he was awarded $350,000 but his services were terminated at the end of 1993. The plaintiff became unemployed. He then formed a joint venture with a Mr. Ridell to develop managed health systems in Europe initially. The plaintiff was promised 20% of the European operation and 49% of the USA operation. The parties moved to England in 1994. The plaintiff was CEO at a salary of $300,000. The program developed by the plaintiff was judged to be viable and Blue Cross/Blue Shield of Michigan expressed sufficient interest to offer $10,000,000 for the finished package customized to their needs. The venture capitalist then attempted to remove the plaintiff by reincorporating and attempting to finish the program himself. The scheme failed, the customer for the program was lost, the plaintiff was again unemployed and in 1996 the family moved back to this state to a home in Weston located at 32 Farrell Road. The plaintiff litigated the issues both in the U.K. and in this country. The new corporation filed for bankruptcy and the plaintiff settled for $150,000 in 1996. Once the plaintiff became engaged with his entrepreneurial enterprise be stopped working as a surgeon and has never returned to the practice since 1993.
The plaintiff then sought employment through headhunters, not as a surgeon, but seeking another venture directed toward making money, but was unable to secure a profitable position. He also sought consulting assignments while developing new programs working at home. He made no effort to resume his surgical career. He permitted his Connecticut medical license to lapse. To reacquire it he must sit for the examination. He is licensed by New York but has not practiced there.
At defendant's request he left the marital home in May 1998 for about ten months, moving to an apartment in New York City during the interim. The plaintiff denies that he promised to seek steady employment as a condition of the reconciliation. The defendant had commenced dissolution action during this time and was adamant in her testimony that the plaintiff promised to return to the practice of medicine in order to provide a reliable income stream. The court has concluded that her explanation for the reconciliation is the more reliable.
In December 1999 he was employed by Olympic Health Care for eighteen months receiving $10,000 monthly and an additional $5,000 monthly which the plaintiff characterized as loans. The company was a venture start-up CT Page 4332 with a program for factoring hospital billings at discounts. It suspended operations for lack of cash. He also has been promoting PACES International Inc. since 1995 without any noticeable success (Defendant's Exhibit A).
The defendant decided to separate from the plaintiff and she with the children left for Boston on January 1, 2002. She left a hand written letter which read, after assuring him that he was welcome and the children will want to see him:
"I had to leave, the financial stress and emotional strain were too much for the children and me — I need to use my support system (Jay) to get a job and give the kids some sense of security . . ." (Plaintiff's Exhibit #1)
This action was commenced immediately thereafter.
The plaintiff moved to an apartment unit located in Washington, DC at 3225 Grace Street Apt. 226 which he had acquired in 1982. After three months the defendant and the children returned to the Weston home.
The defendant had begun giving swimming lessons in the heated pool situated at the marital home for a year until the plaintiff joined Olympic. The defendant has also worked as a lifeguard and has given lessons at Weston Middle School.
On May 27, 1994 the parties' financial planner, Robert A. Karn, JD, LLM, CFP of Farmington, Connecticut prepared a statement entitled "Investments" which listed their total as $550,416 (Defendant's Exhibit E). The plaintiff, from time to time from 1996 would call Mr. Karn for assistance in raising money for the family's ongoing expenses. The defendant found this practice unwise to be spending assets for recurring household expenses. This proved to be one of the causes of the marriage breakdown.
When the trial began on January 15, 2003 the plaintiff listed, as his only income, monthly taxable interest of $58. As assets he listed the Weston home as having a fair market value of $700,000 less a first mortgage balance of $350,000 and a second mortgage balance of $145,000 and equity of $205,000. It is in joint names. The parties stipulated the apartment FMV to be $330,000. He lists a mortgage balance on it of $12,000. He lists antiques valued at $10,000 and two motor vehicles at $3,000. Under pension retirement plans he lists the following:
IRA-Chase 028535022419 $7,088 CT Page 4333
TIAA-CREE (sic) $512,000
CIBC Oppenheimer (391-61072) $18,500
North American Co. L010521950 $229,119
Total $766,707
He lists life insurance face value $400,000 with a cash surrender value of $11,472.
The plaintiff has a proven earning capacity over many years ranging from $100,000 to $300,000. Most recently he accepted an offer of employment from Doctors4Doctors, Inc to serve as its President with annual salary of $100,000 commencing May 1, 2002, renewable year to year unless cancelled by either party (Defendant's Exhibit K). The offer is pending corporate funding which has never occurred. The plaintiff admitted to the defendant that he could work in the ER of a hospital but did not want to. The plaintiff admitted at trial to an earning capacity of $50,000 but the court finds and concludes that his earning capacity presently is $100,000. This finding takes into consideration his surgical skills and experience, as well as his persistent seeking of managerial positions or business startups that repeatedly resulted in termination, arbitration, litigation, and relocation. The court has concluded that the plaintiff's failure to pursue his primary profession of physician over a protracted period of time resulting in the need to draw down on assets in order to meet ordinary expenses is the primary and principal cause of the breakdown of the marriage.
The plaintiff has possessed a much higher earning capacity throughout the marriage and has the greater ability to acquire assets in the future.
The defendant is employed as a swim instructor and lifeguard by the Weston Parks Recreation Department and by the Weston Board of Education, earning an average monthly gross wage of $1,400 and net after taxes of $1,263.57. She values the Weston home at $600,000 with a first mortgage balance of $355,000 and an equity line mortgage balance of $144,000. She values her other assets as:
1996 Volvo $4,500
Ralston Purina stock 4,000
IRA account 55,000
Cash 100
She has no life insurance. She assigns no value to the furnishings in the marital home, the Marriott time share in Orlando, Florida or to the Trapp Family time share in Stowe, Vermont. CT Page 4334
The court has reviewed the evidence in light of the relevant statutes and case law and enters the following decree.
1. Judgment is rendered dissolving the marriage on the ground of irretrievable breakdown and each party is declared to be unmarried.
2. The parties are awarded joint legal custody with physical custody given to the mother and reasonable visitation given to the father.
3. The plaintiff is ordered to pay to the defendant, as periodic unallocated alimony and child support the sum of $600 weekly until the death of either party or the remarriage or cohabitation of the payee. The court finds the order to be a deviation from the child support guidelines but authorized by Section 46b-215a-3 (b)(5)(A) for the order will not result in a lesser economic benefit to the children. A wage withholding order is entered.
4. The pendente lite stipulation dated November 5, 2002 and approved by the court on December 2, 2002 is ordered completed to this date and unpaid items shall be paid according to its tenor.
5. The plaintiff's interest in 32 Farrell Road, Weston, Connecticut is awarded to the defendant "as is" together with the contents therein. She shall assume the mortgage balances and shall hold the plaintiff harmless and indemnified provided he is current with all his obligations herein set forth.
6. The plaintiff shall retain as his sole property the real estate known as 3225 Gray Street, Apt. 226, Washington, DC. He shall be solely responsible for the mortgage thereon. He shall retain the 1982 BMW which shall be removed from the marital home premises within 30 days.
7. The defendant is awarded 50% of the plaintiff's Chase IRA, 50% his TIAA CREF pension fund, 50% of his CIBC Oppenheimer Account and 50% of the North American Retirement Plan. The court retains jurisdiction to execute any QDRO or other order required to effect this order. CT Page 4335
8. The defendant shall retain her IRA, the Ralston Purina stock and the Volvo. She is awarded the plaintiff's interest in the two time share units located in Orlando and Stowe.
9. The defendant is awarded ownership of the plaintiff's life insurance policy or policies listed by him as face value $400,000 with cash surrender value of $11,472. The plaintiff shall execute all necessary assignment documents within 30 days.
10. The plaintiff shall be solely responsible for the liabilities listed on his financial affidavit.
11. The defendant shall be solely responsible for the liabilities listed on her financial affidavit.
12. The plaintiff shall continue to maintain medical insurance for the children at his expense. The parties shall divide equally any uninsured balances or deductibles. Conn. Gen. Stat. Sec 46b-84 (e) applies to this order.
13. The court's decree hereby explicitly provides that a motion or petition for an educational support order may be filed by either parent at a subsequent date as allowed by P.A. 02-128.
 SO ORDERED. Harrigan, J.T.R.
CT Page 4336